UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KAH INSURANCE BROKERAGE INC.,

                  Plaintiff,              **REPORT AND
RECOMMENDATION**

    -against-               21-CV-5851 (JMA) (ARL)

THOMAS B. MCGOWAN IV, MCGOWAN
PROGRAM ADMINISTRATORS, INC., and
JEFFREY GUKENBERGER,

                  Defendants.
------------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

       Plaintiff KAH Insurance Brokerage Inc., ("KAH" or "Plaintiff") brings this action against

defendants Thomas B. McGowan IV and McGowan Program Administrators, Inc. (the

"McGowan Defendants"), and Jeffrey Gukenberger ("Gukenberger", and together with the

McGowan Defendants, "Defendants") asserting claims of breach of contract, promissory

estoppel, tortious interference with existing contractual relationships, and tortious interference

with prospective economic relations. Before the Court, on referral from District Judge Azrack,

is the motion to dismiss for lack of personal jurisdiction pursuant to Federal Rules of Civil

Procedure ("Rule") 12(b)(2) filed by Gukenberger on October 6, 2022, ECF No. 22, along with a

motion the dismiss pursuant to Rules 12(b)(2) and 12(b)(6) and to compel arbitration under the

Federal Arbitration Act ("FAA"), filed by the McGowan Defendants on November 11, 2022.

ECF No. 28. For the reasons stated below, the Court respectfully reports and recommends that

the motion to dismiss for lack of personal jurisdiction be granted.

## BACKGROUND

    **I.**    **Factual Background**

The following facts are drawn from the Complaint, unless otherwise noted, and are accepted as true for purposes of the instant motion. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). These facts, however, do not constitute findings of fact by the Court. *See Colvin v. State Univ. College at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 U.S. Dist. LEXIS 85678, 2014 WL 2864224, at *1 n.1 (E.D.N.Y. June 19, 2014).

KAH is a New York corporation, and a retail insurance brokerage, which sold insurance products nationally, including within the State of New York.  Compl. ¶ 15.  Between 2005 and 2020, KAH sold a variety of insurance products to franchisees of McDonald's Corporation located throughout the United States ("U.S. Owner/Operators") as an "Approved Insurer" pursuant to an agreement with McDonald's USA LLC.  *Id*. at ¶ 17.  Those products included Property and Umbrella Insurance, Employment Practices Liability Insurance ("EPLI"), Cyber Liability Insurance ("Cyber") and Workers' Compensation Insurance.  *Id*. at ¶ 16.  According to Plaintiff, there are over 600 U.S. Owner/Operators locations with more than 40,000 employees located in New York.  Henry Decl. ¶ 13. [1]  Brendan C. Henry ("Henry") is the President and owner of KAH.  Declaration of Thomas B. McGowan IV ("McGowan Decl.") ¶ 7.

Defendant McGowan Program Administrators, Inc. ("MPA") is a division of McGowan & Company, Inc., an Ohio corporation, which is an insurance brokerage. McGowan Decl. ¶ 4.  McGowan & Company, Inc, is a part of The McGowan Companies.  *Id*.  Defendant Thomas B. McGowan, IV is the President and Chief Executive Officer of The McGowan Companies.  *Id*. at ¶¶ 4-5.  According to Plaintiff, "McGowan Inc. touts itself as 'America's leading writer of innovative insurance programs' providing 'Uncommon Service' to its McDonald's franchisees at 'competitive quotes.'"  Compl. ¶ 2.  The McGowan Defendants have provided a declaration from

---

[1] As discussed below, the Court may consider the declarations submitted by the parties for purposes of Defendants' motions to dismiss pursuant to Rule 12(b)(2).

Thomas B. McGowan, IV, indicating that he is a resident of Ohio, works in the Ohio headquarters of MPA, does not regularly conduct, transact or solicit business in New York, and he did not visit New York to meet with Plaintiff to negotiate the proposed asset purchase. McGowan Decl. ¶¶ 3, 5, 7.  He similarly testified that MPA does not have any offices in New York and that no employees, agents, or representatives of The McGowan Companies, including MPA, visited with Plaintiff in New York regarding the proposed transaction.  *Id.* at ¶¶ 5, 7.

Defendant Gukenberger is an individual who resides in the State of Florida. Declaration of Jeffrey Gukenberger ("Gukenberger Decl.") ¶ 4.  From January 2010 through July 2012, Gukenberger was employed by Plaintiff.  Compl. ¶ 21.  Currently, according to his declaration, Gukenberger is the President of non-party Owners Risk Insurance Services, Inc. ("Owners Risk"), a consulting company based in the State of Illinois.  Gukenberger Decl. ¶¶1, 6.  Owners Risk has a single and exclusive agreement with McDonald's National Owners Insurance Team ("NOIT"), an Illinois entity that exists for purposes of identifying cost-effective programs to satisfy the U.S. Owners/Operators' insurance needs.  *Id.* at ¶¶ 8-9.  Pursuant to its exclusive agreement, Owners Risk reports directly to NOIT and provides risk management services and confidential insurance guidance for U.S. Owners/Operators.  *Id.* at ¶ 9. Defendant Gukenberger performs his services for Owners Risk remotely, from his home in Florida.  *Id.* at ¶ 12.  Plaintiff argues, however, that Gukenberger also operated a company known as Owners Risk Management Association ("ORMA"), which regularly sent Plaintiff invoices from ORMA to be forwarded to insurance companies for payment of annual fees generated based upon the number of McDonald's franchisees which ORMA serviced.  Henry Decl. ¶¶ 3-4.

According to the Complaint, in 2012, Gukenberger, through ORMA, created a nation-wide program for the provision of EPLI, Cyber and Workers' Compensation insurance to US

Owner/Operators (the "National Program"). Compl. ¶ 23. The Complaint alleges that the National Program was required to include not less than one NOIT approved carrier for EPLI and Cyber carrier and a minimum of three NOIT approved workers' compensation carriers. *Id.* at ¶ 20. Plaintiff contends that the National Program was in direct competition with Plaintiff's EPLI and Cyber program carriers, which were brokered by Edgewater Holdings, Ltd. ("Edgewater"). *Id.* at ¶ 23. According to the Complaint, at some point after July 2012, Gukenberger induced Edgewater to stop working exclusively with Plaintiff and become the exclusive wholesale insurance broker for EPLI and Cyber policies, for ORMA and all U.S. Owner/Operators. *Id.* at ¶¶ 27-29. Plaintiff alleges that, in February 2019, The McGowan Companies purchased Edgewater, resulting in The McGowan Companies becoming the only "National provider of EPLI, Cyber and Workers' Compensation insurances to U.S. Owner/Operators." *Id.* at ¶¶ 30-31.

In 2020, the National Program suffered from a shortage of Workers' Compensation carriers for the 2021-2022 policy period, which threatened the ongoing viability of the National Program. *Id.* at ¶ 32. Plaintiff alleges that to address this issue, Gukenberger approached AmTrust in an effort to enlist their Workers' Compensation insurance program for the McDonald's National Worker's Compensation program. At that time, Gukenberger was informed that Plaintiff had already signed a deal to be the McDonald's Workers' Compensation Managing General Agent for AmTrust. *Id.* at ¶ 34. According to the Complaint, between 2013 and 2020, Plaintiff was a broker for AmTrust. *Id.* at ¶ 33.

According to the Complaint, the McGowan Defendants first approached Plaintiff on March 3, 2020, offering, in an email to purchase Plaintiff. *Id.* at ¶ 36. Next, in August 2020, McGowan began communicating with Henry, in an effort to obtain the AmTrust business relationship in advance of the purported asset purchase. *Id.* at ¶ 38. Plaintiff alleges that, in

4

September 2020, McGowan approached Plaintiff with an offer to purchase Plaintiff's assets, including its existing business with AmTrust, for $3,175,000, which was an increase from the $3,000,000 originally offered. *Id*. at ¶¶ 36, 40. During the course of the negotiations McGowan sent Plaintiff 54 text messages related to the potential deal. *Id*. at ¶ 41. The Complaint alleges that Plaintiff ultimately transferred its AmTrust Workers' Compensation Managing General Agent appointment to McGowan prior to receiving a written contract based upon, *inter alia*, McGowan's repeated assurances that he and Plaintiff had reached a "deal"; that the deal "would not change" because of AmTrust; and as a result of the pressure being exerted upon Plaintiff by Gukenberger. *Id*. at ¶ 44. The deal never closed and Plaintiff claims it has not been compensated despite Defendants receiving the benefit of Plaintiff's AmTrust Business. *Id*. at ¶ 45.

The Complaint alleges a contract and agreement with McGowan exists, based the terms of a non-binding letter of intent ("LOI") between KAH and The McGowan Companies. *Id*. at ¶¶ 40, 53. On or about October 8, 2020, the Parties executed the LOI for the potential sale of certain of KAH's assets to The McGowan Companies, via an asset purchase agreement. McGowan Decl. ¶ 8, Ex. A. It is that potential sale and that valuation amount that KAH seeks in this action as damages. Compl. ¶¶ 40, 52. Plaintiff takes the position that "[i]rrespective of the text messages, a review of the Letter of Intent makes clear that it contained all the essential elements necessary to form a binding contract (price, payment terms, description of assets being purchased, etc.) despite the perfunctory language that it was non-binding." Henry Decl. ¶ 18. For purposes of the motion to dismiss for lack of jurisdiction, the Court notes that the LOI provides that "[t]his LOI and the Asset Purchase Agreement shall be governed by and construed by the laws of the State of Delaware, without regard to principles of conflict of law." McGowan

5

Dec., Ex. A, p.7.   The draft asset purchase agreement also provides that "[a]ll claims and controversies that arise shall be subject to the exclusive jurisdiction of the state and federal courts located in Cleveland, Ohio."  *Id*. at Ex. C, p. 44.

**II**.   **Procedural History**

Plaintiff commenced this action by filing a complaint in New York Supreme Court on September 13, 2021.  The action was removed to this Court on October 20, 2021.  ECF No. 1. On October 6, 2022, the motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) was filed by Gukenberger.  ECF No. 22.  The McGowan Defendants also moved to dismiss the Complaint for lack of personal jurisdiction, as well as failure to state a claim, or to compel arbitration on November 11, 2022.  ECF No. 28.  Plaintiff has responded to both motions.  *See* Plaintiff's Memorandum of Law in Opposition to Defendant Jeffrey Gukenberger's Motion to Dismiss ("Pl. Gukenberger Mem.") ECF No. 23; Plaintiff's Memorandum of Law in Opposition to Defendants Thomas B. McGowan IV and McGowan Program Administrators. Inc.'s Motion to Dismiss ("Pl. McGowan Mem.").  ECF No. 28-8.  By order dated April 28, 2023, District Judge Azrack referred both motions to the undersigned for a Report and Recommendation.

## DISCUSSION

### I.  Standard of Law

"Rule 12(b)(2) authorizes a party to seek dismissal on the ground that the Court lacks personal jurisdiction over . . . it."  *Sidik v. Royal Sovereign Int'l, Inc.,* No. 17-CV-7020 (JS)(ARL), 2020 U.S. Dist. LEXIS 165906, at *1, 2020 WL 5441306 (E.D.N.Y. Sept. 10, 2020). "On a motion to dismiss for a lack of personal jurisdiction, the plaintiff bears the burden of establishing the Court's jurisdiction over the defendants."  *Brown v. City of N.Y.*, No. 10-CV-

5229, 2013 U.S. Dist. LEXIS 89955, 2013 WL 3245214, at *3 (E.D.N.Y. June 26, 2013).

"Unlike a motion to dismiss pursuant to Rule 12(b)(6), deciding a Rule 12(b)(2) motion

necessarily requires resolution of factual matters outside the pleadings." *Zibiz Corp. v. FCN*

*Tech. Solutions*, 777 F.Supp.2d 408, 416 (E.D.N.Y. 2011) (internal quotations omitted).

Accordingly, courts may rely on additional materials when ruling on Rule 12(b)(2) motions.

*Minnie Rose LLC v. Yu,* 169 F. Supp. 3d 504, 510 (S.D.N.Y. 2016).

"Where a court [has chosen] not to conduct a full-blown evidentiary hearing on the

motion, the plaintiff need only make a prima facie showing of jurisdiction through its own

affidavits and supporting materials." *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d

158, 165 (2d Cir. 2005) (internal quotation marks and citation omitted); *see Penguin Group*

*(USA) Inc. v. American Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010) (same).  "Such a showing

entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if

credited[,] would suffice to establish jurisdiction over the defendant." *Id.* at 35.  "If the parties

present conflicting affidavits, however, 'all factual disputes are resolved in the plaintiff's favor,

and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by

the moving party." *In re Banco Bradesco S.A. Sec. Litig.,* 277 F. Supp. 3d 600, 630 (S.D.N.Y.

2017) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co.,*

*Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)).

**II.    Analysis**

All Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(2) for lack

of personal jurisdiction.  Personal jurisdiction of a federal court over a non-resident defendant is

governed by the law of the state in which the court sits subject to certain constitutional

limitations of due process. *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.

1994). "The issue of personal jurisdiction involves a two-step inquiry: (1) whether state law provides a basis for personal jurisdiction and if so, (2) whether exercising personal jurisdiction comports with constitutional principles of due process." *Saudi v. Marine Atl., Ltd.,* 306 Fed. Appx. 653, 654 (2d Cir. 2009) (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243-44 (2d Cir. 2007); *see also Shelbourne Global Solutions, LLC v Gutnicki LLP*, No. 21-cv-2223 (KAM) (SJB ), 2023 US Dist. LEXIS 32105, at *12, 2023 WL 2240438 (E.D.N.Y. Feb. 27, 2023).

There are two possible grounds for a court to exercise personal jurisdiction under New York State law.  Personal jurisdiction can be either general or specific.  *Brown v. Lockheed Martin Corp*., 814 F.3d 619, 624 (2d Cir. 2016).  General jurisdiction allows a court to adjudicate any cause of action against the defendant, regardless of where it arose.  *Id.*  Pursuant to Section 301 of New York's Civil Procedure Law ("CPLR"), a court may exercise general jurisdiction over a defendant that is present or is engaged in "continuous, permanent, and substantial activity in New York."  *See Saudi,* 306 Fed. Appx. at 655 (citing *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir. 1991)).

Specific jurisdiction "is available when the cause of action sued upon arises out of the defendant's activities in a state." *Brown*, 814 F.3d at 624*.* "A court may exercise personal jurisdiction under New York CPLR Section 302(a)(1) if a foreign defendant (1) 'transacts any business in New York and (2) the plaintiff's cause of action arises from the business transaction.'" *Saudi,* 306 Fed. Appx. at 654 (citing *Best Van Lines,* 490 F.3d at 246).  There must be a "substantial relationship between the claim asserted and the actions that occurred in New York." *Id.* (citing *Best Van Lines,* 490 F.3d at 249).  "To determine whether a sufficient nexus exists, a court must evaluate the 'totality of the circumstances surrounding the defendants' activities in New York in connection with the matter giving rise to the lawsuit.'" *Id.* (citing *PDK*

8

*Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1109 (2d Cir. 1997)).  "Under section 302(a)(2) and (3), a court can exercise jurisdiction over a defendant who commits a tort within New York or elsewhere if the tort cause injury to a person within New York."  *Cagan v Gadman*, No. CV 08-3710 (SJF)(ARL), 2009 U.S. Dist. LEXIS 152897, at *12 (E.D.N.Y. July 6, 2009).  "In order to succeed under either of the latter subsections, the plaintiff must aver facts that satisfy all of the requirements of the subsections, including that the tort was committed in New York or that the tort caused the plaintiff injury in New York." *Id.*

Here, with respect to the McGowan Defendants, Plaintiff alleges personal jurisdiction exists over McGowan pursuant to CPLR Sections 302(a)(2) and (3), and over MPA pursuant to CPLR Sections 301, 302(a)(1), (2) and (3).  *See* Compl. ¶¶ 12, 13.  In response to the McGowan's Defendants' motions to dismiss, Plaintiff has abandoned its claim that jurisdiction exists under Sections 301 and 302(a)(2) by failing to address the arguments made by the McGowan Defendants.  *See Lubavitch of Old Westbury, Inc. v Inc. Vil. of Old Westbury*, No. 2:08-CV-05081 (GRB) (LGD), 2023 US Dist LEXIS 20642 (EDNY Feb. 7, 2023); *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014).  As to Defendant Gukenberger, in the Complaint, Plaintiff has only alleged personal jurisdiction pursuant to CPLR Sections 302(a)(2) and (3), and just as with respect to the McGowan Defendants, has abandoned its claim under Section 302(a)(2). [2]  *See* Compl. ¶ 14.

---

[2] In its opposition to Gukenberger's motion to dismiss Plaintiff argues that this Court has jurisdiction over Defendant Gukenberger pursuant to CPLR Section 302(a)(1).  *See* Pl. Gukenberger Mem. at 9-13.  However, in the complaint Plaintiff fails to assert jurisdiction on the basis of this section. *See* Compl. ¶ 14. Setting forth this argument in opposition to the motion does not amount to an amendment of the Complaint to include this allegation. *See 4FS Fam., Inc. v. Lifchitz*, No. 21-903-CV, 2021 U.S. App. LEXIS 34569, at * 4, 2021 WL 5441264 (2d Cir. Nov. 22, 2021) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("[A] party is not entitled to amend its complaint through statements made in motion papers.")).  In addition, despite being on notice of Defendants' arguments regarding jurisdiction, Plaintiff elected not to file an amended complaint to allege jurisdiction under this section of the CPLR in response to Defendants' motion to dismiss.  Thus, the Court does not recommend that leave to amend be granted here.  *See, e.g., Overby v. Fabian*, No. 17-CV-3377 (CS), 2018 U.S. Dist. LEXIS 114525, 2018 WL 3364392, at *14 (S.D.N.Y. July 10, 2018) ("Plaintiff's failure to fix deficiencies in

## A.        Jurisdiction under CPLR § 302 (a)(1)

The McGowan Defendants contend that Plaintiff has failed to establish the personal

jurisdiction over MPA exists under CPLR Section 302(a)(1) because Plaintiff fails to establish

the transaction of business in New York or contracting to supply goods or services in the state, as

required under CPLR § 302(a)(1).  McGowan Mem. at 11, McGowan Reply Mem. at 3.

Section 302(a)(1) of the CPLR provides for specific jurisdiction over a non-domiciliary

for claims arising out of the "transact[ing] [of] any business within the state or contract[ing]

anywhere to supply goods or services in the state…." CPLR§ 302(a)(1). "To determine whether

a party in a contract action has "transacted business" within the meaning of Section 302(a)(1),

courts focus primarily on the following factors:

> (i) whether the defendant has an on-going contractual relationship with a New
> York corporation; (ii) whether the contract was negotiated or executed in New
> York and whether, after executing a contract with a New York business, the
> defendant has visited New York for the purpose of meeting with parties to the
> contract regarding the relationship; (iii) what the choice-of-law clause is in any
> such contract; and (iv) whether the contract requires [the defendant] to send
> notices and payments into the forum state or subjects them to supervision by
> [a] corporation in the forum state.

*Skrodzki v. Marcello*, 810 F. Supp. 2d 501, 509 (E.D.N.Y. 2011) (citing *Sunward Elec., Inc. v.*

*McDonald,* 362 F.3d 17, 22–23 (2d Cir.2004)).  Courts also consider whether the contract is to

be performed in New York.  *Id.* (citing *Cooper, Robertson & Partners, L.L.P. v. Vail*, 143

F.Supp.2d 367, 371 (S.D.N.Y.2001) ("the place of performance is more critical than the place of

the execution of a contract")).  However," no single factor is dispositive." *Id.*  "The overriding

---

his previous pleading, after being provided ample notice of them, is alone sufficient ground to deny leave to amend
sua sponte."); *see also Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018)
("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a
second amendment even if the proposed second amended complaint in fact cures the defects of the first." (alteration
and internal quotation marks omitted)). Accordingly, Plaintiff's argument regarding Section 302(a)(1) with respect
to Defendant Gukenberger has not been addressed.

criterion 'necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York.'" *Atwal v. Ifinex Inc*., No. 22-cv-149 (JLS) (LGF), 2023 U.S. Dist. LEXIS 72862 (W.D.N.Y. Mar. 22, 2023) (quoting *Pincione v. D'Alfonso*, 506 F. App'x 22, 24 (2d Cir. 2012)); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) ("the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York"). With regard to Section 302(a)(1)'s second requirement, "a suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship between the claim asserted and the actions that occurred in New York." *Id*. at 66 (citation omitted). Section 302(a)(1)'s requirements may be satisfied by a single act within New York, *id.* at 62, but "jurisdiction will not extend to cover defendants with nothing more than petty contacts to the state." *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 726 (S.D.N.Y. 2010).

In the Complaint, Plaintiff alleges that MPA "(i) routinely and systematically transacts and solicits business in the state of New York, (ii) is registered to transact business in the State of New York, (iii) has appointed an agent in New York for service of process, and (iv) has committed tortious acts without the state which have caused injury to Plaintiff's current and prospective business relations in New York State." Compl. ¶ 13. In opposition to the McGowan Defendants' motion to dismiss, Plaintiff contends, without citation, that "McGowan, both individually and as President of MPA, conspired with co-defendant Gukenberger to co-opt KAH's New York-based insurance business and clients." Pl. McGowan Mem. at 10. In addition, Plaintiff argues that "the McGowan Defendants solicitation and of KAH [sic] assets for the purpose of conducting business in New York with KAH's existing New York-based clients, as

well as, McGowan's actional promises to purchase KAH's AmTrust business subject both MPA and McGowan to the jurisdiction of this Court."[3]  *Id.*

In contrast, the McGowan Defendants argue that MPA is a division an Ohio company, with its headquarters in Ohio.  McGowan Decl. ¶ 4.  McGowan is a resident of Ohio and works in the Ohio headquarters of MPA.  *Id.* at ¶ 3. MPA does not have any offices in New York.  *Id.* at ¶ 5. McGowan does not regularly conduct, transact or solicit business in New York.  *Id.* at ¶ 5. McGowan did not visit New York to meet with Plaintiff to negotiate the proposed asset purchase.  *Id.* at ¶ 7. No employees, agents, or representatives of The McGowan Companies visited with Plaintiff in New York regarding the proposed transaction.  *Id.* at ¶ 7.

With respect to whether MPA had an on-going contractual relationship with Plaintiff, the McGowan Defendants admit that "KAH has an ongoing relationship with The McGowan Companies (including defendant MPA) pursuant to a written brokerage agreement.  McGowan Decl. at ¶ 9.  However, while the written brokerage agreement demonstrates an on-going relationship between Plaintiff and the McGowan Defendants, it does not relate to the transaction which is the subject matter of this action, which is McGowan's failure to go forward with its purported agreement to purchase Plaintiff's assets, including its existing business with AmTrust, for $3,175,000.  Compl. ¶ 36.

Although Plaintiff is physically located in New York, nowhere does the complaint or any declaration submitted by Plaintiff, specifically allege that any New York business was impacted. Indeed, "[t]he appropriate focus of an inquiry under CPLR § 302(a)(1) is on what the non-domiciliary defendant did in New York and not on what the plaintiffs did." *Biz2Credit, Inc. v.*

---

[3] The Court notes that while in its brief Plaintiff purports to assert jurisdiction over McGowan individually pursuant to Section 302(a)(1), the Complaint asserts jurisdiction against this defendant only pursuant to Sections 302(a)(2) and (3).  As discussed above, Plaintiff may not amend its pleadings in this manner and the argument will be disregarded.

*Kular*, No. 14 Civ. 8223, 2015 U.S. Dist. LEXIS 66674, 2015 WL 2445076, at *5 (S.D.N.Y. May 21, 2015).  Plaintiff contends that that the McGowan Defendants breached the LOI by failing to pay for the transfer of Plaintiff's role as he national McDonald's Workers' Compensation Managing General Agent for AmTrust.  Compl. ¶¶ 54-55.  The LOI was negotiated entirely remotely, none of MPA's employees or representatives stepped foot in New York to negotiate the LOI, and MPA does not maintain offices or employees in New York. McGowan Decl. ¶¶ 5, 7.  While the Court recognizes that the defendant's physical presence in New York is not always dispositive in determinations of jurisdiction under CPLR § 302(a)(1)," *see Palace Expl. Co. v. Petroleum Dev. Co*., 41 F. Supp. 2d 427, 432–33 (S.D.N.Y. 1998), "courts seem generally loath to uphold jurisdiction under the 'transaction in New York' prong of CPLR 302 if the contract at issue was negotiated solely by mail, telephone, and fax without any New York presence by the defendant." *C.B.C. Wood Prod., Inc. v. LMD Integrated Logistics Servs*., Inc., 455 F. Supp. 2d 218, 225 (E.D.N.Y. 2006) (citing *Worldwide Futgol Assoc., Inc. v. Event Entm't, Inc.,* 983 F. Supp. 173, 177 (E.D.N.Y. 1997), *see also Shelbourne Global Solutions,* 2023 US Dist. LEXIS 32105, at *15.  Moreover, New York courts have repeatedly expressed the rule that solicitation alone is not enough to acquire jurisdiction over a non-domiciliary defendant.  *Tech. Prod. Int'l, Inc. v. Integrated Electronics Inc*., No. 85 CIV. 2111 (PKL), 1986 U.S. Dist. LEXIS 29165, , at *3, 1986 WL 2413 (S.D.N.Y. Feb. 19, 1986). "Typically, there must exist an additional jurisdictional contact with the forum, such as shipment of goods into the jurisdiction, or the presence of defendant or its agents in the jurisdiction, in order to allow the court to find that a defendant availed itself of the benefits of the forum.  *Id*.; *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir.1983) ("New York courts have consistently refused to sustain § 302(a)(1) jurisdiction solely on the basis of defendant's

communication from another locale with a party in New York"). None of these additional contacts exist in this case.

Further supporting the McGowan Defendants' position that MPA has not purposefully availed itself of the privilege of conducting activities within New York, the LOI at issue here provides that "[t]his LOI and the Asset Purchase Agreement shall be governed by and construed by the laws of the State of Delaware, without regard to principles of conflict of law."[4] McGowan Dec., Ex. A at p.7. Additionally, the unexecuted asset purchase agreement provides that it shall be governed by the laws of Ohio. *Id*., Ex. C, at p. 43. The unexecuted asset purchase agreement also provides that "[a]ll claims and controversies that arise shall be subject to the exclusive jurisdiction of the state and federal courts located in Cleveland, Ohio." *Id*. at p. 44. In sum, the only evidence Plaintiff has proffered to support jurisdiction is that MPA negotiated with Plaintiff, who was located in New York, to purchase a business which offered insurance products nationally. Without more, and in light of the choice of law and forum selection provisions in each of the relevant agreements, this Court cannot conclude that MPA purposefully availed itself of the privilege of conducting activities within New York, and therefore specific jurisdiction as to MPA pursuant to CPLR § 302(a)(1) does not exist.

### B.     Jurisdiction under CPLR § 302 (a)(3)

The McGowan Defendants contend that Plaintiff has also failed to establish that personal jurisdiction over any of the McGowan Defendants exists under CPLR Section 302(a)(3) because Plaintiff has failed to allege that New York was the situs of Plaintiff's injury. McGowan Mem. at 12-13, McGowan Reply Mem. at 6.[5] Gukenberger makes a similar argument, as well as

---

[4] The brokerage agreement entered between the parties in February 2014 provides that is shall be governed by the laws of Ohio. *Id*. Ex. B, at p. 10.

[5] The McGowan Defendants raise for the first time in their reply that Plaintiff fails to allege an actionable tort. McGowan Reply Mem. at 6. The Court will not address arguments made for the first time in a reply brief. *See*

contending Plaintiff has failed to allege that Gukenberger committed tortious conduct and that Defendant Gukenberger does not derive substantial revenue from interstate commerce. Gukenberger Mem. 18-25, Gukenberger Reply at 5-10.

Under Section 302(a)(3), specific jurisdiction exists over a non-domiciliary defendant if that defendant commits a tortious act outside of New York that causes injury inside New York; and, if the defendant either: (i) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods or consumed or services rendered, in the state"; or (ii) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3); *see also D'Anzieri v Harrison Glob. LLC*, No. 21-cv-8506, 2022 U.S. Dist. LEXIS 217780, 2022 WL 17404254, at *6 (S.D.N.Y. Dec. 2, 2022); *Sidik v. Royal Sovereign Int'l, Inc.*, No. 17-CV-7020, 2020 U.S. Dist. LEXIS 165906, 2020 WL 5441306, at *4-5 (E.D.N.Y. Sep. 10, 2020); *Muraco v. Sandals Resorts Int'l*, No. 14-cv-4896, 2015 U.S. Dist. LEXIS 172156, 2015 WL 9462103, at *3 (E.D.N.Y. Dec. 28, 2015). "Jurisdiction under this provision has five elements: (1) a tortious act outside the State; (2) the cause of action arises from that act; (3) the act caused injury within the State; (4) the defendant expected or should reasonably have expected the act to have consequences in the State; and (5) the defendant derived substantial revenue from interstate or international commerce." *Holbrook Plastic Pipe Supply v. Jackson*, No. 04-cv-03211-ADS-WDW, 2006 U.S. Dist. LEXIS 112787, at *12 (E.D.N.Y. Jan. 3, 2006). The McGowan Defendants challenge the third element – the act caused injury within the State.

---

*Baliga on behalf of Link Motion Inc. v. Link Motion Inc.,* 385 F. Supp. 3d 212, 223-24 (S.D.N.Y. 2019) (the court "will not consider new matters raised in replies for the first time"); *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 737 (S.D.N.Y. 2012) ("arguments raised for the first time in reply should not be considered, because the plaintiff[] had no opportunity to respond to those new arguments.").

Section 302(a)(3) jurisdiction may only be conferred unto a non-domiciliary when the first effect of the tort is felt in New York, even if the tort is committed outside of New York. *See DiStefano v. Carozzi N. Am., Inc.,* 286 F.3d 81, 84-85 (2d Cir. 2001); *see also Mareno v. Rowe,* 910 F.2d 1043, 1046 (2d Cir. 1990).  To determine whether a tortious act caused an injury in New York, courts apply the situs-of-injury test. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 791 (2d Cir. 1999)(quoting *Hermann v. Sharon Hosp., Inc.,* 135 A.D.2d 682, 683, 522 N.Y.S.2d 581, 581 (2d Dep't 1987)). "The situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff."  *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2001).  In commercial tort actions where the alleged injury is solely financial loss, New York courts hold that the situs of injury is "where the original critical events associated with the action or dispute took place, not where any financial loss or damages occurred." *CRT Investments, Ltd. v. BDO Seidman, LLP,* 85 A.D.3d 470, 471-72, 925 N.Y.S.2d 439, 441 (1st Dep't 2011).  In the context of commercial torts, the New York Court of Appeals has made clear that "the residence of the injured party in New York is not sufficient to satisfy the clear statutory requirement of an 'injury within the state' " for purposes of section 302(a)(3).  *See McGowan v. Smith,* 52 N.Y.2d 268, 274-75, 419 N.E.2d 321, 437 N.Y.S.2d 643 (1981); *see also Verragio, Ltd. v. Malakan Diamond Co.,* No. 16 Civ. 4634 (CM), 2016 U.S. Dist. LEXIS 150689, 2016 WL 6561384, at *3 (S.D.N.Y. Oct. 20, 2016) ("[t]he mere fact that the injured party resides or is domiciled in New York is not a sufficient predicate for jurisdiction under CPLR § 302(a)(3)").

"Generally for a commercial tort, New York is the situs of the injury 'if the plaintiff raises the inference that the tortious conduct caused him to lose business or customers within the state.'" *Snowbridge Advisors LLC v. ESO Cap. Partners UK LLP,* 589 F.Supp.3d 401, 414

(S.D.N.Y. 2022) (citing *Pincione,* 506 F. App'x at 26); *see also Park W. Galleries, Inc. v. Franks,* No. 12-CV-03007 (CM), 2012 U.S. Dist. LEXIS 86629, 2012 WL 2367040, at *5-6 (S.D.N.Y. June 20, 2012) ("[n]umerous Federal courts applying the CPLR have likewise held that, 'lost sales or customers can satisfy the 'injury within New York' requirement under Section 302(a)(3)(ii), [but] those lost sales must be in the New York market, and those lost customers must be New York customers'") (quoting *Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 336-337 (S.D.N.Y. 2008)); *Covanex, Inc. v. Duvvada*, 14-CV-6050-FPG, 2015 U.S. Dist. LEXIS 164349, 2015 WL 8375211, at *3 (W.D.N.Y. Dec. 8, 2015)(concluding that plaintiff failed to allege injury in New York where there is no claim that Plaintiff lost clients in New York and therefore "this Court has no basis under § 302(a)(3) to assert personal jurisdiction"); *Kelly v. MD Buyline, Inc*., 2 F. Supp. 2d 420, 439 (S.D.N.Y. 1998) ("This principle has specific application to claims such as tortious interference, and generally precludes jurisdiction when the asserted injury is the loss of a customer outside of New York.").

Here, in the complaint, Plaintiff alleges that four (4) out of ten (10) accounts unbound their EPLI insurance with Plaintiff for the March 1, 2021 policy period as a result of Defendants' interference. Compl. ¶ 50.  However, Plaintiff does not allege that any of these accounts were located in New York, or, associated with New York in any way.  Indeed, Plaintiff provides correspondence from one of its customers that cancelled a policy and that customer was located in Georgia.  *See* Gukenberger Reply ("Brendan Henry identifies only a single U.S. Owner/Operator, Messer Franchises, LLC ("Messer Franchises"), a Georgia-entity, in an attempt to support this claim").

In response to Gukenberger's motion to dismiss, which is incorporated by reference into Plaintiff's response to the McGowan Defendants' motion to dismiss, Plaintiff states that

Gukenberger, "knew or should have known that his interference with KAH's ability to sell McDonald's insurance Products by targeting its New York-based U.S. owner/Operators would have a negative impact upon its business in New York." Pl. Gukenberger Response at 15. However, Plaintiff has failed to provide any factual basis for this conclusory assertion in the Complaint or the declaration of its President Henry submitted in opposition to Defendants' motions. While Plaintiff claims to need jurisdictional discovery to gather facts supporting its claim that jurisdiction exists, this information is squarely within Plaintiff's control and has not been offered to the Court.[6] Based on these pleading failures, the undersigned finds that it cannot recommend the Court exercise specific jurisdiction over Gukenberger or the McGowan Defendants, accordingly, the undersigned respectfully recommends that the Court grant Defendants' motion to dismiss for a lack of personal jurisdiction.

C.    **Jurisdictional Discovery**

In opposition to the motions to dismiss, Plaintiff has requested permission to conduct jurisdictional discovery to support its jurisdictional allegations. Pl. McGowan Mem. at 7-8, Pl. Gukenberger Mem. at 7-9. "District courts have considerable discretion in determining how best to handle jurisdictional questions," and "'generally may permit a plaintiff to conduct limited discovery with respect to the jurisdictional issue'." *In re Herald, Primeo and Thema Funds*

---

[6] Because this Court concludes that Plaintiff has failed to demonstrate that the situs of the injury is New York, the Court has not considered Gukenberger's additional arguments in support of his motion to dismiss. Similarly, it is unnecessary to consider whether exercising jurisdiction would impact Defendants' due process rights. *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.,* No. 16-CV-442 (NRB), 2017 U.S. Dist. LEXIS 14942, at *17, 2017 WL 449913 (S.D.N.Y. Jan. 18, 2017) ("[h]aving found that we lack personal jurisdiction over defendant under CPLR 302(a)(3)(ii), we do not consider whether exercising jurisdiction would comport with due process") (citing *Penguin Grp. (USA) Inc. v. Am. Buddha,* 609 F.3d 30, 35 (2d Cir. 2010), certified question answered, 16 N.Y.3d 295, 946 N.E.2d 159, 921 N.Y.S.2d 171 (2011); *LaMarca v. Pak-More Mfg. Co.,* 95 N.Y.2d 210, 214 (2000))("it is only once the long- arm statute is deemed satisfied that the court need examine whether due process is likewise comported with").

*Securities Litig.*, Nos. 09 Civ. 289 (RMB)(HBP), 09 Civ. 2032, 09 Civ. 2558, 2011 WL 4056819, at *2 (S.D.N.Y. Sept. 8, 2011) (quoting *Filus v. Lot Polish Airlines,* 907 F.2d 1328, 1332 (2d Cir. 1990) (internal citations omitted)). "Such discovery has typically been authorized where the plaintiff has made a threshold showing that there is some basis for the assertion of jurisdiction[,] facts that would support a colorable claim of jurisdiction." *Id.* (internal quotation marks and citations omitted). However, where a plaintiff has failed to establish a prima facie case of personal jurisdiction, a district court does not abuse its discretion not to permit jurisdictional discovery. *See Best Van Lines, Inc.*, 490 F.3d at 247 (citations omitted); *Atwal,* 2023 U.S. Dist. LEXIS 72862 (Plaintiff "failed to make a prima facie showing of personal jurisdiction. Discovery would not cure these deficiencies"); *Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 169 (E.D.N.Y. 2006) ("courts in this circuit routinely reject requests for jurisdictional discovery where a plaintiffs allegations are insufficient to make out a prima facie case of jurisdiction"). Plaintiff here has not made even a threshold showing of a connection between Defendants and New York, and, indeed, with respect to Plaintiff's tort claims, the missing factual assertions relate to Plaintiff's business and additional jurisdictional discovery cannot cure this defect. Accordingly, the undersigned respectfully recommends that Plaintiff's request for permission to conduct jurisdictional discovery be denied.

      **D.**      **Motion to Dismiss Pursuant to Rule 12(b)(6)**

      Having found that this Court lacks personal jurisdiction over Defendants, this Court lacks the power to dismiss the complaint for failure to state a claim. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) ("Not only does logic compel initial consideration of the issue of jurisdiction over the defendant—a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim—but the functional difference that flows from the ground

selected for dismissal likewise compels considering jurisdiction and venue questions first.");

*Phoenix-Dolezal v. Lili Ni,* No. 11 Civ. 3722(LAK)(JLC), 2012 U.S. Dist. LEXIS 5178, 2012 WL 121105, at *4 (S.D.N.Y. Jan. 17, 2012) ("since [plaintiff] has failed to meet his burden of establishing that the Court has personal jurisdiction over [defendant], the Court lacks power to dismiss the complaint for failure to state a claim") (internal quotations omitted).  "This is also prudent as the motions have different consequences for a litigant, for instance, the plaintiffs ability to re-file a claim." *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12-CV-9258, 2014 U.S. Dist. LEXIS 45891, at *6, 2014 WL 1331046 (S.D.N.Y. Mar. 31, 2014) (citing *Arrowsmith*, 320 F.2d at 221 ("A dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an appropriate forum, whereas a dismissal for failure to state a claim upon which relief can be granted is with prejudice.").

Accordingly, it is respectfully recommended that no decision be rendered on the McGowan Defendants' motion to dismiss for failure to state a claim.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Such objections shall be filed with the Clerk of the Court via ECF.  Any requests for an extension of time for filing objections must be directed to Judge Azrack prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within this period waives the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc*., No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Thomas v. Arn*, 474 U.S. 140,

155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
   August 4, 2023

            _____/s_____
            ARLENE R. LINDSAY
            United States Magistrate Judge